UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID SWAFFORD,<br><br>       Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>       Defendant. | Case No. 18-CV-04916-LHK<br><br>**ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 42 |

Plaintiff David Swafford ("Swafford") brings the instant lawsuit against Defendant International Business Machines Corporation ("IBM"). Before the Court is IBM's motion to dismiss the amended complaint. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS in part with prejudice, GRANTS in part without prejudice, and DENIES in part IBM's motion to dismiss the amended complaint.

## I. BACKGROUND

### A. Factual Background

Swafford is a resident of Santa Clara County, California and a software sales representative at IBM since 2009. Amend. Compl. ¶¶ 6, 12. IBM is a New York corporation with its principal

1

place of business in the state of New York. *Id.* ¶ 7. Swafford's compensation as an IBM sales representative consisted of a salary plus commissions. *Id.* ¶ 15. This case concerns Swafford's commission payments (also referred to as "incentive payments") and IBM's commission plan and policies.

### 1. Facts and Allegations Related to IBM's Commission Payments

Swafford had a written commission plan known as the Incentive Plan Letter ("IPL") for the second half of 2016 that covered the sales period from July 1, 2016 through December 31, 2016. *Id.* ¶ 17; *see also* Mot., Ex. 1 ("IPL").[1] The IPL provided that Swafford's sales quota for the second half of 2016 was $512,600. IPL at 2. The IPL also provided information about Swafford's commissions.

First, the IPL provided that, without an IPL in place, an employee is "not eligible to receive any related incentive payments." *Id.* The IPL defined the "Plan" as the incentive plan information contained in the IPL and at IBM's Worldwide Incentives Workplace website. *Id.*

Second, the IPL provided that IBM had the right to make changes to incentive payment rates or quotas. *Id.* at 3. The IPL stated:

> **Right to Modify or Cancel:** The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it. IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives (including management-assessment objectives), changes to assigned customers, territories, or account opportunities, or changes to applicable incentive payment rates or quotas, target incentives or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, at any time during the Plan period up until any related payments have been earned under the Plan terms. Managers below the highest levels of management do not know whether IBM will or will not change or adopt any particular compensation plan; they do not have the ability to change the Plan terms for any employee; nor are they in a position to advise any employee on, or speculate about, future plans. Employees should make no assumptions about the impact potential Plan changes may have on their personal situations unless and until any such changes are formally announced by IBM.

---

[1] A court may consider documents that were referenced but not attached to the complaint for purposes of deciding a Rule 12(b)(6) motion. *Davis v. HSBC Bank Nev., NS.*, 691 F.3d 1152, 1159–60 (9th Cir. 2012); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

*Id.*

Third, the IPL provided that IBM could change incentive payment calculations resulting from errors. *Id.* The IPL stated:

> **Adjustments for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or communication of sales objectives. Depending on when an error is identified, corrections may be made before or after the last day of the full-Plan period, and before or after the affected payment has been released.

*Id.*

The IPL also provided that IBM may review significant transactions:

> **Significant Transactions:** IBM reserves the right to review and, in its sole discretion, adjust incentive achievement and/or related payments associated with a transaction which (1) is disproportionate when compared with the territory opportunity anticipated during account planning and used for the setting of any sales objectives; or for which (2) the incentive payments are disproportionate when compared with your performance contribution towards the transaction.

*Id.* at 4.

Finally, the IPL also explained how incentive payments are earned under the Plan:

> **Full-Plan Earnings:** Regardless of your start date, your incentive payments are earned under the Plan terms, and are no longer considered Plan-to-Date advance payments, only after the measurement of complete business results following the end of the full-Plan period or (if applicable) after the measurement of complete business results after the date you left the Incentive Plan early. Incentive payments will be considered earned only if you have met all payment requirements, including: (1) you have complied with the Incentive Plan, the Business Conduct Guidelines and all other applicable IBM employment policies and practices; (2) you have not engaged in any fraud, misrepresentation or other inappropriate conduct relating to any of your business transactions or incentives; (3) and the customer has paid the billing for the sales or services transaction related to your incentive achievement.

*Id.*

Despite the IPL, during Swafford's time at IBM, IBM repeatedly made representations that Swafford's commissions would be uncapped. Amend. Compl. ¶¶ 15–16. For instance, Swafford regularly received from IBM PowerPoint presentations with over 200 slides, which IBM called

3

"Educational Materials," that described the terms of the commission plans. *Id.* ¶ 16. Each year, the Educational Materials stated repeatedly that "commissions are uncapped." *Id.* "Nowhere in the Educational Materials is there anything even suggesting that the sales commissions may be capped in some instances or that IBM reserves the right to cancel or modify whether and to what extent commissions may be capped." *Id.*

During the second half of 2016, Swafford received and reviewed a PowerPoint titled "Our Purpose, Values & Practices" relating to "Your 2016 Incentive Plan." *Id.* ¶¶ 17–20. Page 13 of the PowerPoint specifically stated that "[e]arnings opportunity remains uncapped," and that the presentation mentions no less than six times in its 18 pages that "payments" and/or "earnings opportunit[ies]" are "uncapped." *Id.* ¶ 20. These representations were repeated in sales meetings and by IBM managers. *Id.* ¶ 21. These representations are "also in line with IBM's written guidance to its managers," which provides:

> Conditions that may lead to an adjustment include the need to correct errors or the need to balance with employee's contribution to the success of a large sales transaction (which criteria must be clearly provided to Commissions team). Adjustments must not be done only as a ceiling or cap on the total earnings allowable to employees.

*Id.* ¶ 22. The amended complaint alleges that "[i]n other words, IBM's official policies provide that sales representatives' commissions may be adjusted to correct errors, but their commissions may not be arbitrarily capped for the purpose of limiting an employee's earnings." *Id.* ¶ 23.

**2. Swafford's Allegations That His Commission Payments Were Capped**

In 2016, Swafford worked on behalf of IBM to close two large deals of IBM products and services with Oracle ("Oracle Deal") and Sabre, Inc. ("Sabre Deal"). *Id.* ¶¶ 25–26. Swafford's efforts in closing the Oracle and Sabre Deals resulted in a total sale of approximately $3 million in IBM products and services. *Id.* ¶ 26. Swafford's revenue credit on all the deals he closed in the second half of 2016, including the Oracle and Sabre Deals, was approximately $4,983,275, and Swafford's quota was $512,600. *Id.* On those recognized amounts, Swafford earned commissions of $966,316, that should have been paid to him in January 2017. *Id.* ¶ 27.

4

Swafford was not paid any commission in January 2017. *Id.* Instead, Swafford's first line manager, Mark Briggs ("Briggs"), informed Swafford that because of the size of the deals, Swafford's commissions were going through an internal review process. *Id.* ¶ 28. On February 23, 2017, Briggs emailed Swafford to tell Swafford that Briggs had just been "informed by IBM that [Swafford's] attainment has been capped at 250% of plan." *Id.* ¶ 30; s*ee also id.*, Ex. A. Briggs told Swafford in a phone call after that email that "IBM decided it was simply too much money to pay Mr. Swafford the full commissions he had earned, and thus, IBM would be paying him only a portion of those commissions." *Id.* ¶ 30.

IBM ultimately paid Swafford $716,522 in commissions for the second half of 2016, which was $249,765 less than what Swafford should have been paid in commissions. *Id.* ¶¶ 31–34.

The only reason Swafford was "ever provided by IBM for why he was not paid all of the commissions he had earned, was that IBM thought it was simply too much money to pay Mr. Swafford, and thus, [IBM], was unwilling to pay him in full." *Id.* ¶ 35. After Swafford's further attempts to learn why he had not been paid in full, Swafford's second line manager, Richard Wirtenson ("Wirtsenson") emailed him on May 1, 2017 and said: "I made the recommendation to Don [Leeke] [(Swafford's third line manager)] that we pay on all other deals 100% but CAP the Oracle and Sabre transactions at 150% of your quota on each." *Id.* ¶¶ 29, 36; *see also id.*, Ex. B.

### 3. Swafford's Allegations Regarding IBM's History of Capping Commissions

The amended complaint quotes from a case in the Middle District of North Carolina, *Bobby Choplin v. International Business Machines Corporation*, No. 16-cv-1412-TDS-JEP (the "Choplin Action"), where the plaintiff, who had an IPL, alleged that IBM had represented in PowerPoint presentations that it would not cap commissions, yet capped Choplin's commissions. *See* Amend. Compl. ¶ 41.[2]

---

[2] IBM raises evidentiary objections to Swafford's allegations about the Choplin Action. *See* Mot. at 20 (citing Fed. R. Civ. P. 32(a)(8) and Fed. R. Evid. 804(b)(1)). However, at the motion to dismiss stage, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Therefore, the Court OVERRULES IBM's evidentiary objections.

Although the Choplin Action ultimately settled, Choplin had taken four depositions: (1) a Rule 30(b)(6) deposition of IBM, through corporate designee Richard Martinotti, *id.*, Ex. C; (2) a deposition of Choplin's first-line manager, Thomas Batthany, *id.*, Ex. D; (3) a deposition of Choplin's second-line manager, Haleh Maleki, *id.*, Ex. E; and (4) a deposition of Mark Dorsey, a former IBM Vice President of Software Sales, *id.*, Ex. F (collectively, the "Choplin Depositions").

The amended complaint alleges that these Choplin Depositions demonstrate that IBM had an obligation not to cap, that Swafford was entitled to rely on the statements in the PowerPoints, and that what IBM did when it reduced Swafford's commission was in fact "capping." ¶ 43. During the Choplin Depositions, for instance, IBM testified through corporate designee Richard Martinotti that it had an "obligation" not to cap Choplin's earnings opportunity or payments: "Q. Okay. So you would agree that IBM when explaining [Choplin's] compensation plan for the first half of 2015 represented to Bobby Choplin that his earnings opportunity remains uncapped, wouldn't you?" "A. Correct." "Q. Would you also agree that IBM represented to Bobby Choplin regarding his first half of 2015 compensation plan that payments were uncapped?" "A. Correct." "Q. So would you agree that IBM had an obligation not to cap Bobby Choplin's earnings opportunity?" "A. Yes." "Q. Would you agree that IBM had an obligation not to cap Bobby Choplin's payments?" "A. Correct." *See id.*, Ex. C at 18:19–19:12. Additionally, IBM testified through corporate designee Richard Martinotti that it would be reasonable for a salesperson to rely on the statements in various PowerPoints regarding the compensation plan. *Id.* at 66:5–68:1.

**B. Procedural History**

Swafford filed his initial complaint against IBM on August 14, 2018, which alleged that IBM owes him unpaid commissions related to deals that IBM entered into with Oracle and Sabre, Inc. ECF No. 1. Swafford's initial complaint asserted claims for: (1) breach of oral and/or implied contract; (2) quantum meruit; (3) unjust enrichment; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) violation of the California Labor Code; (7) violations of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (8) punitive

damages. *See id.* On October 19, 2018, IBM moved to dismiss Swafford's initial complaint. ECF No. 24.

On November 2, 2018, Swafford filed an amended complaint. ECF No. 32 ("Amend. Compl."). In his amended complaint, Swafford asserts claims for: (1) "[v]iolation of California Labor Code"; (2) violations of the UCL, Cal. Bus. & Prof. Code § 17200; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) quantum meruit; (6) unjust enrichment; and (7) punitive damages. *See id.* Swafford's first cause of action alleges "Violation of California Labor Code," but in fact alleges violations of California Civil Code § 1668 and California Labor Code §§ 221, 223, and 2751. Not only is the title of the claim incomplete because it fails to mention the California Civil Code, but also lumping all of these claims together into one cause of action is improper. *See, e.g.*, Fed. R. Civ. P. 10 ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."); *Saling v. Royal*, No. 2:13-CV-1039-TLN-EFB, 2015 WL 5255367, at *4 (E.D. Cal. Sept. 9, 2015) ("To the extent plaintiff is attempting to assert multiple causes of action in one count, they are to be separated into individual counts for each cause of action in the event plaintiff files an amended complaint.").

On November 16, 2018, IBM filed the instant motion to dismiss Swafford's amended complaint. ECF No. 42 ("Mot."). Swafford opposed on November 30, 2018. ECF No. 44 ("Opp'n"). IBM replied on December 7, 2018. ECF No. 46 ("Reply"). IBM filed four statements of recent decision. *See* ECF Nos. 45, 47, 54, and 60. Swafford also filed a statement of recent decision. ECF No. 61.

## II.     LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be stated with particularity. Specifically, the Ninth Circuit has held that averments of fraud "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . .

8

claim." *Id.* at 1107. The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.    DISCUSSION

As discussed, in his amended complaint, Swafford asserts claims for: (1) "[v]iolation of California Labor Code"; (2) violations of the UCL, Cal. Bus. & Prof. Code § 17200; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) quantum meruit; (6) unjust enrichment; and (7) punitive damages. *See* Amend. Compl. ¶¶ 53–112. Swafford's first cause of action alleges "Violation of California Labor Code," but in fact alleges violations of California Civil Code § 1668 and California Labor Code §§ 221, 223, and 2751

IBM argues that all of Swafford's claims should be dismissed. *See* Mot. First, IBM argues

9

that Swafford's fraudulent misrepresentation claim fails because Swafford failed to plead his fraud claim with the requisite particularity and because Swafford failed to allege an intent to deceive and reasonable reliance. Mot. at 2, 10–11. Second, IBM argues that Swafford's negligent misrepresentation claim fails because Swafford cannot establish the requisite reasonable reliance. *Id.* at 5. Third, IBM argues that the Court should dismiss Swafford's quantum meruit and unjust enrichment claims for failure to state a claim. *Id.* at 15. Fourth, IBM argues that the Court should dismiss Swafford's claim for violations of the California Civil and Labor Code. *Id.* at 15–17. Fifth, IBM argues that Swafford's unfair business practices in violation of California's UCL, Cal. Bus. & Prof. Code § 17200, claim fails because it is derivative of Swafford's other insufficient claims. Mot. at 18. Finally, IBM argues that the Court should dismiss Swafford's claim for punitive damages because the punitive damages claim is derivative of Swafford's fraudulent misrepresentation claim. *Id.* at 18. The Court addresses IBM's motion to dismiss as to each claim below. For the reasons given below, the Court GRANTS in part with prejudice, GRANTS in part without prejudice, and DENIES in part IBM's motion to dismiss.

### A. Fraudulent Misrepresentation Claim

Swafford brings a claim for fraudulent misrepresentation. Amend. Compl. ¶¶ 78–86. For the elements of fraud, the Court looks to state law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In California, the elements of fraud are: (1) a misrepresentation; (2) made with knowledge of its falsity (scienter); (3) with the intent to defraud, i.e., to induce reliance; (4) which did induce reasonable reliance; (5) causing damages. *Id.* (citation omitted). Under Rule 9(b), a plaintiff is required to state with particularity the circumstances of his allegations of fraud. *Id.* at 1124; *see also* Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124.

IBM argues that Swafford's fraud claim must be dismissed because (1) Swafford fails to plead his fraud claim with sufficient particularity pursuant to Rule 9(b); (2) Swafford fails to allege that IBM had an intent to deceive; and (3) Swafford fails to allege reasonable reliance. Mot.

United States District Court
Northern District of California

at 10–13. The Court discusses each argument below.

**1. Sufficient Particularity**

First, IBM argues that Swafford fails to plead fraud with sufficient particularity because, according to IBM, Swafford does not allege the "who" and the "when" of his claim. Mot. at 10–11; *see Kearns*, 567 F.3d at 1124. Specifically, IBM points out that Swafford alleges that IBM made misrepresentations that Swafford's commissions would not be capped in: (1) a PowerPoint, which "IBM sent to Mr. Swafford to explain his commissions for the 2H 2016 sales period, and which Mr. Swafford reviewed, and which was always available via the intranet"; and (2) "the statements at sales meetings by IBM executives and Managers at the highest levels of management that commissions would not be capped." Amend. Compl. ¶ 79. As to the second instance, IBM argues that Swafford "inexplicably fails to identify any IBM managers or executives who allegedly represented that his commissions were uncapped, the specific statement[s] made by these individuals, and when these statements were purportedly made." Mot. at 11. The Court agrees with IBM that Swafford's failure to identify the "who" and "when" for this allegation "as it relates to any alleged oral representations by managers" falls short of the pleading standard required by Rule 9(b). *See id.* However, the Court also agrees with Swafford that "IBM implicitly concedes in its brief that the PowerPoint representation is sufficient." *See* Opp'n at 10.

Thus, the Court DENIES IBM's motion to dismiss Plaintiff's fraudulent misrepresentation claim for lack of sufficient particularity to the extent Plaintiff's fraudulent misrepresentation claim is based on the PowerPoint.

However, to the extent Plaintiff's fraudulent misrepresentation claim is based on oral statements by IBM executives and managers at sales meetings, the Court finds that the allegation is not pled with sufficient particularity, and therefore the Court GRANTS IBM's motion to dismiss. *See, e.g.*, *Beard v. Int'l Bus. Machs. Corp.*, No. C 18-06783 WHA, Dkt. No. 51 (N.D. Cal. Apr. 7, 2019) (dismissing IBM sales representative plaintiff's fraudulent misrepresentation claim to the extent it is based on statements by IBM managers because "the complaint fails to

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

identify the IBM managers who allegedly represented that plaintiff's commissions were uncapped or the specific statements made by those individuals"). However, because the Court finds that leave to amend would not unduly prejudice IBM, cause undue delay, or be futile, and because Swafford has not acted in bad faith, the Court grants leave to amend to allege the "who" and "when" as to Swafford's allegations regarding the oral statements by IBM executives and managers at sales meetings. *Leadsinger, Inc.*, 512 F.3d at 532.

### 2. Intent to Deceive

IBM next argues that Swafford cannot allege the requisite intent to deceive because IBM expressly disclaimed in the IPL that Swafford's incentive plan did not create any promise or obligation by IBM to pay any particular amount in commissions. Mot. at 11–12. The Court finds that IBM's argument fails. IBM's argument focuses primarily on whether reliance was reasonable, not whether IBM intended to deceive, and the IPL disclaimers do not reveal IBM's motivation for informing sales representatives in the PowerPoint presentation and managers' statements that commissions were uncapped. As Swafford points out, circumstantial evidence may be used to prove a party's intent. *See, e.g.*, *In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996). Here, Swafford has alleged that most employers in Swafford's field do not cap commissions and that IBM would be unable to recruit good sales representatives if IBM informed sales representatives that their commissions would be capped. Amend. Compl. ¶ 40. Accordingly, the Court concludes that Swafford has plausibly alleged intent to deceive. *See, e.g.*, *Fessler v. Int'l Bus. Machines Corp.*, No. 1:18-cv-798, 2018 WL 6220209, at *6 (E.D. Va. Nov. 28, 2018) (finding that IBM sales representative plaintiff alleged intent to deceive when the sales representative alleged that most employers in the field do not cap commissions and that if IBM advertised that it capped, that would affect IBM's ability to recruit) (appeal filed); *Beard*, No. C 18-06783 WHA, Dkt. No. 51 (finding IBM sales representative plaintiff alleged intent to deceive because "[t]he complaint alleges that IBM knew that an 'uncapped commissions' program was highly motivating to sales representatives" and that "most employers do not cap commissions," so "[w]ere IBM to disclose

12

that it capped commissions, it would severely hamper its efforts to recruit good salespeople").

### 3. Reasonable Reliance

IBM also argues that Swafford cannot allege reasonable reliance because Swafford's IPL unambiguously states that IBM reserved the discretion to review and adjust commission payments. Mot. at 13. The Court disagrees.

Here, the Court finds inconsistent IBM's insistence that Swafford is bound by the representations in the IPL. IBM repeatedly states that the IPL is not a contract and that the IPL does not create any obligations for IBM. *See, e.g.*, Mot. at 16 ("[T]he IPL does not create an enforceable contract."); Reply at 9 ("[T]he IPL does not create an enforceable contract that imposes contractual obligations on IBM"); Mot. at 11 (stating that IBM expressly informed Swafford that "his incentive plan did not create a contractual obligation or promise by IBM to pay commissions"). Yet, IBM nonetheless insists that Swafford was required to rely only on IBM's representations in the IPL and nothing else. Moreover, although the IPL stated that IBM did not promise to make any commission payments under the Plan and that IBM had the right to modify or cancel the Plan, Swafford has nonetheless alleged that IBM made representations in a PowerPoint that his commissions would not be capped. Amend. Compl. ¶ 79. These IBM representations were inconsistent with the representations in the IPL. *See* IPL at 3–4.

Moreover, Swafford has alleged why IBM may have made the inconsistent representations: most employers in Swafford's field do not cap commissions and IBM would be unable to recruit good sales representatives if IBM informed sales representatives that their commissions would be capped. Amend. Compl. ¶ 40. IBM should not be allowed to make inconsistent representations and then insist that, as a matter of law, its sales representatives were incorrect to rely on IBM's representations. The Court concludes that, given the inconsistent representations in the PowerPoint and given that the IPL was not a contract, it is plausible that Swafford reasonably relied on IBM's representations that the commissions would be uncapped.

United States District Judge William Alsup of the United States District Court for the

United States District Court
Northern District of California

Northern District of California recently considered the question of whether an IBM sales representative sufficiently alleged reasonable reliance in a case concerning substantially similar allegations. *See Beard*, No. C 18-06783 WHA, Dkt. No. 51. Judge Alsup found that the sales representative plaintiff had plausibly alleged reasonable reliance on the misrepresentations. Specifically, Judge Alsup noted that, "[f]ollowing his receipt of the IPL, plaintiff received the PowerPoint presentation which repeatedly and without reservation stated that his compensation would not be capped. His managers said the same." *Id.* at 6. Judge Alsup continued "[p]laintiff then worked hard to earn a large commission that IBM later capped (or so a jury might reasonably find)." *Id.* Judge Alsup concluded that "even though the IPL contained disclosures regarding IBM's 'right to adjust the Plan terms[,]' the complaint alleges sufficient facts to plausibly suggest that plaintiff reasonably relied on statements in the PowerPoint presentation and by management assuring plaintiff that IBM would not cap his compensation." *Id.* Judge Alsup determined "[i]t will be a question of fact for the jury whether the reliance was reasonable." *Id.* Judge Alsup therefore denied the motion to dismiss plaintiff's misrepresentation claims. *Id.*

Judge Alsup's ruling is consistent with *Vinson v. Int'l Bus. Machines Corp.*, No. 1:17-CV-00798, 2018 WL 4608250, at *10 (M.D.N.C. Sept. 25, 2018). In *Vinson*, the United States District Court for the Middle District of North Carolina found that an IBM sales representative plaintiff plausibly alleged reasonable reliance on IBM's PowerPoint presentation that "payments and earnings opportunity are 'uncapped'" because the IPL only reserved IBM's discretion to modify or cancel incentive payments "up until any related payments have been earned under the Plan," and that therefore "whether IBM actually capped [the plaintiff's] commissions and misrepresented its policy on capping depends on facts not before the court." *Id.* The *Vinson* Court therefore denied IBM's motion to dismiss the plaintiff's misrepresentation claims. *See id.*

Moreover, Judge Alsup in *Beard* addressed several district court rulings to the contrary. For instance, Judge Alsup distinguished the decision of former United States District Judge Jeremy Fogel in *Schwarzkopf v. Int'l Bus. Machines Corp.*, No. C 08-2715 JF (HRL), 2010 WL

14

1929625, at *14 (N.D. Cal. May 2010), which resolved a fraud claim based on an IBM manager's statements, on the basis that Judge Fogel's "decision followed summary judgment and a fully-developed factual record." *Beard*, No. C 18-06783 WHA, Dkt. No. 51 at 7 n.2. Moreover, in *Schwarzkopf*, there was no mention of a PowerPoint or any similar misrepresentations about not capping. *See* 2010 WL 1929625.

Moreover, the instant Court agrees with Judge Alsup that *Fessler* and *Middleton* are not persuasive. The United States District Court for the Eastern District of Virginia's decision in *Fessler* is inconsistent and conclusory because the *Fessler* court simultaneously found that the IPLs were not a contract, but nonetheless the IPLs' statements bound the plaintiff as a matter of law. 2018 WL 6220209, at *4–8. Moreover, the United States District Court for Northern District of Georgia's decision in *Middleton v. Int'l Bus. Machs. Corp.*, is distinguishable because the Northern District of Georgia emphasized that *under the law of its circuit*, "a disclaimer can render reliance unreasonable as a matter of law and, here, the IPL is wrought with disclaimers that bar Plaintiff from claiming justifiable reliance." Case No. 18-cv-3724, at 12 (N.D. GA. Jan. 2, 2019). In the instant case, the Court is not bound by the law of the Eleventh Circuit or its district courts. Similarly, *Snyder v. Int'l Bus. Machs. Corp*, Case No. 1:16-cv-03596-WMR (N.D. GA. Mar. 18, 2019), which relied on *Middleton*, does not require the instant Court to find that Swafford's reliance was not reasonable.

Accordingly, because Swafford has plausibly alleged reasonable reliance on misrepresentations regarding "uncapped" commissions, and because the Court already found that Swafford alleged intent to deceive, the motion to dismiss Swafford's fraudulent misrepresentation claim on this basis is DENIED.[3]

However, as already discussed above, to the extent Plaintiff's fraudulent misrepresentation claim is based on oral statements by IBM executives and managers at sales meetings, the Court

---

[3] Because the Court finds that Swafford has alleged reasonable reliance based on the representations in the PowerPoint, the Court need not address the Choplin Action deposition testimony for purposes of this motion to dismiss.

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

finds the allegation is not pled with sufficient particularity under Rule 9(b), and therefore the Court GRANTS IBM's motion to dismiss with leave to amend to allege the oral statements by IBM executives and managers at sales meetings with sufficient particularity.

## B. Negligent Misrepresentation Claim

Swafford also brings a claim for negligent misrepresentation. Amend. Compl. ¶¶ 87–98. California recognizes a claim for negligent misrepresentation, which, unlike fraudulent misrepresentation, allows recovery in the absence of scienter or intent to defraud. *Los Angeles Unified School Dist. v. Great American Ins. Co.*, 49 Cal. 4th 739, 750 n. 5 (2010). The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) reasonable reliance on the misrepresentation, and (5) resulting damage. *National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services*, 171 Cal. App. 4th 35, 50 (Cal. Ct. App. 2009).

IBM argues that Swafford's negligent misrepresentation claim fails for the same reason that Swafford's fraudulent misrepresentation claim fails, namely, that Swafford cannot establish the requisite reasonable reliance to support his claim. Mot. at 14. The Court has already found above that Swafford has plausibly alleged reasonable reliance on the misrepresentations in the PowerPoint presentation. Therefore, the Court DENIES IBM's motion to dismiss Swafford's negligent misrepresentation claim. *See, e.g.*, *Beard*, No. C 18-06783 WHA, Dkt. No. 51 at 6–7 (denying IBM's motion to dismiss sales representative plaintiff's negligent misrepresentation claim and fraudulent misrepresentation claim after finding plaintiff had pled facts plausibly demonstrating reasonable reliance when plaintiff pled the PowerPoint presentation misrepresentations and the misrepresentations made by IBM managers).

## C. Quantum Meruit and Unjust Enrichment

Swafford brings claims for quantum meruit and unjust enrichment. Amend. Compl. ¶¶ 99–108. Quantum meruit (or quasi-contract) "is an equitable remedy implied by the law under which a

plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269 (9th Cir. 1992). To state a claim for quantum meruit, Swafford must show: (1) that he performed certain services for IBM; (2) that the services were rendered at IBM's request; and (3) that they are unpaid. *Summit Estate, Inc. v. Cigna Healthcare of Cal. Inc.*, No. 17-CV-3871-LHK, 2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017) (citations omitted). Under California law, quantum meruit requires evidence of a plaintiff's reasonable expectation of receiving compensation for services rendered. *See Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004).

In California, "unjust enrichment is not a standalone cause of action." *In re Safeway Tuna Cases*, No. 15-cv-05078-EMC, 2016 WL 3743364, at *1 (N.D. Cal. July 13, 2016). It is for this reason that IBM first asks that this Court dismiss Swafford's unjust enrichment claim. Mot. at 14. However, the Ninth Circuit has previously recognized that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)). Accordingly, the Court construes Swafford's unjust enrichment claim as a quasi-contract claim seeking restitution. *See* Opp'n at 14; *see also Astiana*, 783 F.3d at 762 ("To the extent the district court concluded that the [unjust enrichment] cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal"). The Ninth Circuit has explained that unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request" or a situation where "restitution require[s] a party to return a benefit when the retention of such benefit would unjustly enrich the recipient." *Astiana*, 783 F.3d at 762 (quotation marks and citations omitted).

IBM argues that Swafford's quantum meruit and unjust enrichment claims must be

United States District Court
Northern District of California

dismissed because: (1) neither theory of recovery is available when a contract exists governing all the claimed rights and responsibilities of the parties; and (2) in light of the disclaimers regarding IBM's discretion in the IPL, Swafford cannot allege that he had a reasonable expectation of receiving additional commission or that it was "unfair" or "unjust" for IBM to pay him a reduced commission. Mot. at 15; Reply at 6. The Court discusses both arguments in turn.

First, IBM argues that neither quantum meruit nor unjust enrichment is available when a contract governing all the claimed rights and responsibilities of the parties exists. Mot. at 15 (citing *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354543, at *13 (N.D. Cal. Dec. 5, 2013), and *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-06209-EJD, at *8–9 (N.D. Cal. Jul. 31, 2013)). However, IBM admits that the IPL did not create a contract and that the "IPL did not create any contractual obligations." Mot. at 15; *see also id.* at 9 ("[T]he IPL does not create an enforceable contract."). Therefore, this argument fails.

Second, IBM argues that Swafford cannot allege that he had a reasonable expectation of receiving additional commission or that it was "unfair" or "unjust" for IBM to pay him a reduced commission in light of the IPL. Mot. at 15. As above, the Court finds that Swafford has plausibly alleged reasonable reliance on the misrepresentations in the PowerPoint regarding "uncapped" commissions. Therefore, the Court finds that Swafford plausibly alleges that he reasonably expected his full, uncapped commission and that he provided IBM with a benefit for which he was not fairly compensated. Judge Alsup also recently denied IBM's motion to dismiss a sales representative plaintiff's unjust enrichment claim on this basis. *See, e.g.*, *Beard*, No. C 18-06783 WHA, Dkt. No. 51 at 10 (denying motion to dismiss the unjust enrichment claim because "plaintiff ha[d] sufficiently alleged that he provided IBM with a benefit for which he was not fairly compensated"); s*ee also Vinson*, 2018 WL 4608250, at *6–7 (denying IBM's motion to dismiss sales representative plaintiff's quantum meruit and unjust enrichment claims).

Accordingly, the Court DENIES IBM's motion to dismiss Swafford's quantum meruit and unjust enrichment claims.

18

### D. California Civil and Labor Code Claims[4]

Swafford's amended complaint alleges violations of California Civil Code § 1668 and California Labor Code §§ 221, 223, and 2751. Amend. Compl. ¶¶ 54–67. IBM argues that each of these claims fail. Mot. at 15–16. In the subsections that follow, the Court explores each of IBM's arguments.

#### 1. California Civil Code § 1668

Swafford claims that IBM violated California Civil Code § 1668. Amend Compl. ¶¶ 59, 66. California Civil Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . or violation of law, whether willful or negligent, are against the policy of the law." Swafford's amended complaint alleges that IBM's actions are in violation of California Civil Code § 1668 because "IBM represented that his commissions were uncapped, and that IBM then capped his commissions" and that "IBM is not permitted to cap commissions after it promises sales representatives like Swafford that his commissions are uncapped." Opp'n at 18 (citing Amend. Compl. ¶ 15). Swafford further argues that "to the extent that IBM relies on any provisions of the IPL to excuse its fraud, 'directly or indirectly,' Section 1668 prohibits that." *Id.* IBM argues that Swafford's claim for violation of California Civil Code § 1668 should be dismissed because the IPL does not contain language that would exempt IBM from responsibility for fraudulent conduct. Mot. at 16.

The Court agrees with IBM that the IPL does not, directly or indirectly, contain language which would exempt IBM from responsibility for fraudulent conduct. *See* Mot. at 16; *see also Beard*, No. C 18-06783 WHA, Dkt. No. 51 (dismissing IBM sales representative plaintiff's

---

[4] Swafford's first cause of action alleges "Violation of California Labor Code," but in fact alleges violations of California Civil Code § 1668 and California Labor Code §§ 221, 223, and 2751. Not only is the title of the claim incomplete because it fails to mention the California Civil Code, but also lumping all of these claims together into one cause of action is improper. *See, e.g.*, Fed. R. Civ. P. 10 ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."); *Saling v. Royal*, No. 2:13-CV-1039-TLN-EFB, 2015 WL 5255367, at *4 (E.D. Cal. Sept. 9, 2015) ("To the extent plaintiff is attempting to assert multiple causes of action in one count, they are to be separated into individual counts for each cause of action in the event plaintiff files an amended complaint.").

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

California Civil Code § 1668 claim because "[t]he IPL contains no term which purports to limit IBM's liability for fraudulent conduct or waive plaintiff's ability to bring such a claim."). Accordingly, the Court GRANTS IBM's motion to dismiss Swafford's claim for violation of California Civil Code § 1668. Because the language in the IPL forecloses this claim, any leave to amend the California Civil Code § 1668 claim would be futile. *See Leadsinger, Inc.*, 512 F.3d at 532. Therefore, the Court dismisses this claim with prejudice.

### 2. California Labor Code § 2751

Swafford claims that IBM violated California Labor Code § 2751. Amend Compl. ¶¶ 60, 64–66. "California Labor Code Section 2751 requires that whenever an employer enters into a contract of employment with an employee, the employer must provide a written contract to the employee if the employee's payment involves commissions for services rendered in California." *Piccarreto v. Presstek, LLC*, No. CV 16-1862 DMG (JCx), 2017 WL 3671153, at *2 (C.D. Cal. Aug. 24, 2017) (citing Cal. Labor Code § 2751(a)). "In addition, an employer must then give a 'signed' copy of the contract to the employee and obtain a receipt for the contract from the employee." *Id.* (citing Cal. Labor Code § 2751(b)). Swafford's amended complaint as to the California Labor Code § 2751 violation alleges only that "IBM relied on methods for the computation and payment of commissions that are not set forth in the commissions contract in violation of Section 2751. In particular, IBM capped Mr. Swafford's commissions, despite written promises as part of his compensation plan that his commissions were uncapped." Amend. Compl. ¶ 65.

IBM argues that Swafford's claim for violation of California Labor Code § 2751 should be dismissed because the IPL is in writing and Swafford signed his IPL. Mot. at 17. Swafford responds that Swafford has alleged a violation of California Labor Code § 2751 because the IPL is not a contract and Swafford's IPL was not signed by IBM as required by California Labor Code § 2751. Opp'n at 16; s*ee also Piccarreto*, 2017 WL 3671153, at *2 ("In failing to provide Piccarreto with a 'signed' copy of the 2015 Compensation Plan, which is a commission agreement, Presstek

violated the express terms of Section 2751(b)."); *Abrishamcar v. Oracle Am. Inc.*, Case No. CIV 535490 (San Mateo County Super. Ct. Apr. 5, 2018) (holding that Oracle's Compensation Plan, which was electronically "signed" by the plaintiff but not by Oracle, violated Section 2751).

The Court finds that even if Swafford's argument regarding the fact that IPL is not a contract and that Swafford's IPL was not signed by IBM would be sufficient to state a California Labor Code § 2751 violation, those allegations only appear in Swafford's opposition and are absent from Swafford's amended complaint. The Court cannot rely on Swafford's allegations in his opposition to save his California Labor Code § 2751 violation claim because "[a]llegations raised for the first time in the briefing are not considered in determining the sufficiency of the complaint." *SriCom, Inc. v. EbisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012).

Moreover, as Judge Alsup recently discussed in *Beard*, the California Labor Code no longer provides a private right of action for a violation of § 2751. Prior to January 2012, California Labor Code § 2752 provided that "[a]ny employer who does not employ an employee pursuant to a written contract as required by Section 2751 shall be liable to the employee in a civil action for triple damages." When the California Legislature amended California Labor Code § 2751 in 2011, it repealed § 2752. Stats. 2011, ch. 556, § 3. Therefore, California Labor Code § 2752 no longer provides a private right of action. *See Beard*, No. C 18-06783 WHA, Dkt. No. 51 (dismissing IBM sales representative plaintiff's California Labor Code § 2752 claim because the Labor Code no longer provides a private right of action for violations of that provision). Because the Labor Code no longer provides a private right of action for violations of § 2751, the motion to dismiss this standalone claim is GRANTED. Moreover, any leave to amend to attempt to state a private right of action for violations of § 2751 would be futile. *Leadsinger, Inc.*, 512 F.3d at 532. Therefore, the dismissal is with prejudice. However, as discussed below, in Section III.E.2., this violation may nevertheless serve as a predicate violation for Swafford's UCL claim.

### 3. California Labor Code § 221

United States District Court
Northern District of California

Swafford claims that IBM violated California Labor Code § 221. Amend Compl. ¶¶ 61, 66. California Labor Code § 221 makes it unlawful for an employer "to collect and receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Labor Code § 221. "[A]n employee's 'wages' or 'earnings' are the amount the employer has offered or promised to pay, or has paid pursuant to such an offer or promise, as compensation for that employee's labor." *Kemp v. Int'l Bus. Machs. Corp.*, No. 3:09-cv-03683, 2010 WL 4698490, at *5 (N.D. Cal. Nov. 4, 2010) (citing *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 228 (2007)). Commissions can qualify as wages under California Labor Code § 221, but as the court noted in *Kemp*, "the right of a salesperson or any other person to a commission depends on the terms of the *contract* for compensation." *Id.* (citations omitted). Accordingly, Swafford's California Labor Code § 221 claim requires "some showing that he is contractually entitled to the commissions he claims to have been denied." *Id.* at *6.

Both Swafford and IBM agree that the IPL is not a contract. *See* Mot. at 17 (IBM stating that Swafford's IPL "did not create an enforceable contract"); Opp'n at 16 ("Swafford has not alleged a claim for breach of contract because he agrees with IBM that the IPL is not an enforceable contract."). Moreover, several courts have found that an IBM sales representative's IPL that is similar to the IPL at issue in this case was not a contract. *See, e.g.*, *Kemp*, 2010 WL 4698490, at *5 (finding that the IPL is not a contract because it expressly specifies that it "does not constitute an express or implied contract or a promise by IBM to make any distributions under it" and dismissing IBM sales representative plaintiff's § 221 claim); *Jensen v. Int'l Bus. Machs. Corp.*, 454 F.3d 382, 388 (4th Cir. 2006) ("The terms of IBM's Sales Incentive Plan make clear that they are not to be construed as an offer that can be accepted to form a contract."); *Schwarzkopf*, 2010 WL 1929625, at *8–9 (N.D. Cal. May 12, 2010) ("Any inferences that may be drawn in Schwarzkopfs favor . . . are insufficient to negate IBM's clear intent *not* to contract.") (emphasis in original)); *Gilmour v. Int'l Bus. Machs. Corp.*, No. CV 09–4155 SJO, 2009 WL 8712153, at *2 (C.D. Cal. Dec. 16, 2009) ("[T]he Incentive Plan and Quota Letter did not create

an enforceable employment contract."). Accordingly, because the IPL is not a contract, Swafford cannot allege a violation of California Labor Code § 221, and therefore Swafford's California Labor Code § 221 claim fails as a matter of law. Thus, any leave to amend would be futile. *See, e.g.*, *Beard*, No. C 18-06783 WHA, Dkt. No. 51 (dismissing IBM sales representative plaintiff's California Labor Code § 221 claim because the IPL is not a contract); *Leadsinger, Inc.*, 512 F.3d at 532. Therefore, the Court GRANTS IBM's motion to dismiss Swafford's California Labor Code § 221 claim with prejudice.

### 4. California Labor Code § 223

Swafford claims that IBM violated California Labor Code § 223. Amend Compl. ¶¶ 62–63, 66. California Labor Code § 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Swafford alleges that "IBM secretly underpays commission wages while purporting to follow commission rates designed by contract in violation of Section 223." Amend. Compl. ¶ 63. IBM argues that the Court should dismiss Swafford's California Labor Code § 223 claim because the IPL is not a contract and because the IPL does not designate a wage. Mot. at 17; Reply at 9. Swafford's opposition acknowledges that his California Labor Code § 223 violation claim is contingent on the IPL being an enforceable contract. Opp'n at 16–17. The Court agrees with IBM that Swafford's California Labor Code § 223 claim fails.

First, Swafford's complaint alleges that IBM underpays commissions while purporting to follow commission rates designated *by contract* in violation of § 223. However, as just discussed, Swafford agrees and several courts have already found that the IPL does not constitute a contract. Opp'n at 16; *see, e.g.*, *Kemp,* 2010 WL 4698490, at *5. For this reason alone, Swafford's California Labor Code § 223 claim fails. Moreover, the plain text of the IPL does not "designate" a wage. *See* IPL at 3–4. Accordingly, the Court finds that Swafford's California Labor Code § 223 claim fails as a matter of law, and therefore any leave to amend would be futile. *Leadsinger, Inc.*,

23

512 F.3d at 532. Thus, the Court GRANTS IBM's motion to dismiss Swafford's California Labor Code § 223 claim with prejudice.

### E. UCL, Cal. Bus. & Prof. Code § 17200

Swafford also brings a claim for unfair business practices in violation of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq. See* Amend. Compl. ¶¶ 68–77. The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs.*, *Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Swafford invokes all three prongs of the UCL.

In his complaint, Swafford alleges that IBM violated § 17200 of the UCL because IBM: (1) knowingly misrepresented to Swafford the uncapped nature of his sales commissions; (2) willfully failed to pay all earned commissions to Swafford; and (3) because IBM violated the California Labor Code. Amend. Compl. ¶ 71. IBM moves to dismiss Swafford's UCL claim in its entirety because IBM argues that, to the extent Swafford's UCL claim was derivative of Swafford's other claims, Swafford cannot establish an underlying unlawful, unfair, or fraudulent practice. Mot. at 18; *see Cel-Tech Commc'ns., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (explaining that the UCL effectively "'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). The Court discusses each prong below.

### 1. Unfair and Fraudulent Prongs

First, Swafford's UCL claim under the unfair and fraudulent prongs relies on his misrepresentation and quantum meruit/unjust enrichment claims. Specifically, Swafford alleges that IBM knowingly misrepresented to Swafford the uncapped nature of his sales commissions and that IBM willfully failed to pay all earned commissions to Swafford. Amend. Compl. ¶ 71.

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457,

1473 (2006). In determining whether a practice is unfair, California courts examine the practice's impact on its alleged victim and balance that impact against the reasons, justifications, and motives of the alleged wrongdoer. *Id.* To state a claim under the fraudulent prong of the UCL, plaintiffs must prove "actual reliance on the allegedly deceptive or misleading statements," *Kwikset Corp v. Superior Court*, 51 Cal. 4th 312, 326 (2011), and that "the misrepresentation was an immediate cause of the injury-producing conduct," *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

Because the Court found in the instant Order that Swafford stated misrepresentation claims and claims for quantum meruit/unjust enrichment, *see* Section III.A & B, Swafford's UCL unfair prong claim and Swafford's UCL fraudulent prong claim that relies on those claims also survives. *See, e.g.*, *Beard*, No. C 18-06783 WHA, Dkt. No. 51 at 10 (denying IBM's motion to dismiss UCL claim where plaintiff plausibly alleged misrepresentation claims). Accordingly, the Court DENIES IBM's motion to dismiss Swafford's UCL unfair prong and fraudulent prong claim.

### 2. Unlawful Prong

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns., Inc.*, 20 Cal. 4th at 180. Swafford alleges here that IBM violated the UCL's unlawful prong because IBM violated California Labor Code §§ 200, 201, 202, 204, 221, 223, and 2751. Amend. Compl ¶ 71.

As an initial matter, IBM does not challenge, nor do the parties discuss the underlying California Labor Code §§ 200, 201, 202, 204 violations. *See* Mot.; Opp'n; Reply. Therefore, to the extent Swafford's UCL unlawful prong claim is predicated on violations of those provisions, Swafford's UCL unlawful prong claim survives this motion to dismiss.

With respect to Swafford's predicate California Labor Code §§ 221 and 223 claims, as discussed above, the Court granted with prejudice IBM's motion to dismiss Swafford's underlying California Labor Code §§ 221 and 223 claims. *See* Section III.D.3 & 4. Therefore, to the extent Swafford's UCL unlawful prong claim is predicated on a violations of California Labor Code §§

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

221 and 223, the Court GRANTS IBM's motion to dismiss with prejudice.

Finally, with respect to Swafford's predicate California Labor Code § 2751 claim, the Court granted IBM's motion to dismiss Swafford's California Labor Code § 2751 with prejudice above because a violation of § 2751 cannot serve as a standalone claim. *See* Section III.D.2. Nonetheless, the Court recognized that although a § 2751 violation could not serve as a standalone claim, it could still serve as a predicate violation for Swafford's UCL unlawful prong claim. *See, e.g.*, *Beard*, No. C 18-06783 WHA, Dkt. No. 51 at 8–9 (granting IBM's motion to dismiss the California Labor Code § 2751 claim but holding that a violation of California Labor Code § 2751 may "nevertheless serve as a predicate violation for plaintiff's Section 17200 [claim]."). Therefore, the Court finds that Swafford's UCL unlawful prong claim can rely on a California Labor Code § 2751 violation.

However, for the reasons given in Section III.D.2., the Court finds that Swafford did not sufficiently allege a California Labor Code § 2751 violation because Swafford relies on allegations in the opposition that were not stated in the amended complaint. Therefore, the Court GRANTS IBM's motion to dismiss to the extent Swafford's UCL unlawful prong claim is predicated on a violation of California Labor Code § 2751. The Court finds that leave to amend would not unduly prejudice IBM, cause undue delay, or be futile and Swafford has not acted in bad faith. *Leadsinger, Inc.*, 512 F.3d at 532. Accordingly, the Court provides Swafford leave to amend to allege this theory.

### F. Punitive Damages

Finally, IBM argues that Swafford's claim for punitive damages should be dismissed because it is derivative of Swafford's fraud claim. Mot. at 18; *see also, e.g.*, *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17cv1124-MMA (WVG), at (S.D. Cal. Oct. 17, 2017) (dismissing claim for punitive damages because plaintiff's fraud claim was dismissed). Swafford acknowledges that his claim for punitive damages is derivative of his fraud claim. *See* Opp'n at 19. However, because the Court denied IBM's motion to dismiss Swafford's fraud claim in the

United States District Court
Northern District of California

United States District Court
Northern District of California

instant Order, the Court also DENIES IBM's motion to dismiss Swafford's punitive damages

claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- To the extent the fraudulent misrepresentation claim is based on the PowerPoint presentation, the motion to dismiss is DENIED;
- To the extent the fraudulent misrepresentation claim is based on oral statements by IBM executives and managers at sales meetings, the motion to dismiss is GRANTED with leave to amend;
- The motion to dismiss the negligent misrepresentation claim is DENIED;
- The motion to dismiss the quantum meruit and unjust enrichment claims is DENIED;
- The motion to dismiss the California Civil and Labor Code claims is GRANTED with prejudice;
- The motion to dismiss the UCL claim based on the unfair and fraudulent prongs is DENIED;
- The motion to dismiss the UCL claim based on the unlawful prong to the extent the unlawful prong is predicated on violations of California Labor Code §§ 200, 201, 202, 204 is DENIED;
- The motion to dismiss the UCL claim based on the unlawful prong to the extent the unlawful prong is predicated on violations of California Labor Code §§ 221 and 223 is GRANTED with prejudice;
- The motion to dismiss the UCL claim based on the unlawful prong to the extent the unlawful prong is predicated on a violation of California Labor Code § 2751 is GRANTED with leave to amend;
- The motion to dismiss the claim for punitive damages is DENIED.

If Swafford elects to file a second amended complaint, Swafford must do so within 30 days

of this Order. If Swafford fails to file a second amended complaint within 30 days or fails to cure

the deficiencies identified in this Order, the deficient claims or theories will be dismissed with

prejudice. Swafford may not add new causes of action or new parties without stipulation or leave

of the Court.

**IT IS SO ORDERED.**

Dated: April 17, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

27

Case No. 18-CV-04916-LHK
ORDER GRANTING IN PART WITH PREJUDICE, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT